**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**KATRINA A. BUSTOS,**

        **Plaintiff,**

v.                                                                                    No. CIV-10-0990 LAM

**MICHAEL J. ASTRUE, Commissioner**
**of the Social Security Administration,**

        **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Hearing, With Supporting Memorandum (Doc. 15)* (hereinafter "motion"), filed in this case on March 28, 2011. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See Documents 5* and *7*. The Court has reviewed Plaintiff's motion, *Defendant's Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 16)*, filed May 29, 2011, Plaintiff's *Reply to Defendant's Response to Plaintiff's Motion to Reverse or Remand (Doc. 17)*, filed June 13, 2011, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R*."). For the reasons set forth below, the Court **FINDS** that the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") should be **AFFIRMED** and Plaintiff's motion should be **DENIED**.

## I.  Procedural History

On April 17, 2007, Plaintiff Katrina A. Bustos filed an application for supplemental security income, alleging a disability since November 7, 2006.  (*R. at 150-53.*)  Her application was denied at the initial level on August 16, 2007 (*R. at 75-77*) and at the reconsideration level on January 14, 2008 (*R. at 83–85*).  On March 6, 2008, Plaintiff requested a hearing (*R. at 86-88*), and on September 23, 2009, Administrative Law Judge (hereinafter "ALJ"), George W. Reyes, conducted a hearing (*R. at 35-72*).[1]  Plaintiff was present and testified at the hearing (*R. at 38–64*), and she was represented by counsel (*R. at 35*).  Vocational expert (hereinafter "VE"), Thomas Griner, was also present and testified at the hearing.  (*R. at 35, 65-70.*)

On January 28, 2010, the ALJ issued his decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled.  (*R. at 15–30.*)  Plaintiff requested that the Appeals Council review the ALJ's decision (*R. at 12-13*), and on August 25, 2010, the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner (*R. at 1–4*).  On October 20, 2010, Plaintiff filed her complaint in this case.  [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human*

---

[1]Plaintiff failed to appear for the first hearing which was scheduled for June 1, 2009.  *See* (*R. at 97* and *117*) and [*Doc. 15* at 7].

*Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).

### III. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (RFC), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on January 20, 1982 (*R. at 150*), and states that she received her general equivalency diploma in 2007 (*R. at 63-64*). Plaintiff alleges a disability due to disorders of the back, obesity, asthma, and mental health impairments. (*R. at 38-49, 73, 167.*) Plaintiff worked in food

4

preparation, as a waitress, and a cashier. (*R. at 49, 158.*) Because Plaintiff claimed that she worked one day at a cafeteria and a couple of months at a fast food restaurant, the ALJ found that Plaintiff never "worked above substantial gainful activity (SGA) levels" and, therefore, he found that Plaintiff has no past relevant work. (*R. at 28*); *see* 20 C.F.R. §§ 416.972 and 416.974.

Plaintiff's medical records document treatment from Carlsbad Medical Center (*R. at 226-43*, *343-47* and *360-452*); Joseph Ford, M.D. (*R. at 244-54*); Carlsbad Mental Health Associates (*R. at 255-69*, *314-29* and *348-59*); Albuquerque Health Partners (*R. at 338-42* and *469-88*); and Pecos Valley Clinic (*R. at 452-66*). Plaintiff's medical records include: a Psychiatric Review Technique, dated August 13, 2007, by JLeRoy Gabaldon, Ph.D. (*R. at 288-301*); a Physical Residual Functional Capacity Assessment, dated August 15, 2007, by David P. Green, M.D. (*R. at 302-09*); two Case Analyses, one dated January 11, 2008, by Elizabeth Chiang, M.D. (*R. at 332*), and one dated January 13, 2008, by Lloyd Schneiderman, DO (*R. at 333*). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 17, 2007, the date of her application. (*R. at 20.*) At step two, the ALJ found Plaintiff had the following severe impairments: "lumbar degenerative disc disease, major depression, and a personality disorder." *Id.* At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, App. 1. (*R. at* 21.) In support of this finding, the ALJ stated that there was "no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by

sensory or reflex loss and positive straight-leg raising test." *Id.* The ALJ further stated that the record did "not reflect spinal arachnoiditis or lumbar spinal stenosis."[2] Regarding Plaintiff's mental impairments, the ALJ considered them singly and in combination, finding that they did not meet or medically equal the criteria listings under 12.04 and 12.08. (*R. at 21*). The ALJ further stated that because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria [were] not satisfied." (*R. at 22*). Furthermore, the ALJ found that Plaintiff also failed to satisfy the "paragraph C" criteria because she did "not have a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities." *Id.*

Before step four, the ALJ determined that Plaintiff has the RFC to perform light work with the following additional limitations: Plaintiff "can occasionally crawl; never use ropes, ladders, or scaffolds; and must avoid concentrated exposure to extreme cold and hazardous heights." *Id.* The ALJ further stated that Plaintiff "can attend and concentrate for 2 hours at a time with a break between each 2 hour period in an 8 hour work day, . . . must work at a job that is primarily with things and not with people, . . . may only engage in occasional conversations with supervisors and co-workers, [and] must be afforded an opportunity to sit or stand for 1-2 minutes every hour or so." *Id.* Finally, the ALJ limited Plaintiff's RFC to "simple task [sic] that are not performed in a

---

[2]"Spinal arachnoiditis" is defined as "[i]nflammation of the arachnoid membrane often with involvement of the subjacent subarachnoid space," and the "arachnoid membrane" "lies within the vertebral canal and surrounds the spinal cord and the vertebral portion of the subarachnoid space." *Stedman's Medical Dictionary* (27th ed., Lippincott Williams & Wilkins 2000) at 119. "Lumbar spinal stenosis" is defined as a "stricture" of the "loins or part of the back and sides between the ribs and the pelvis." *Id.* at 1695 and 1034.

fast[-]paced production environment [and] involving only simple work[-]related decisions." (*R. at 22-23.*) In support of his RFC finding, the ALJ stated that he gave great weight to Dr. Ford's opinion to the extent it was consistent with the ALJ's RFC finding, and noted that Dr. Ford concluded that Plaintiff should be able to hold a job requiring lifting up to 20 pounds on a frequent basis. (*R. at 25.*) The ALJ stated that, following his review of the medical documentation and Plaintiff's testimony regarding her mental impairments, he adjusted her RFC to a more limited range of light work than what the state agency, through Dr. Green, concluded in Plaintiff's physical RFC assessment. (*R. at 26.*) The ALJ also stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," and, in assessing Plaintiff's credibility, the ALJ noted "that the record contains evidence that [Plaintiff] has misrepresented facts and exaggerated symptoms and limitations." (*R. at 27.*) Finally, the ALJ noted that "the record does not contain any opinions from treating or examining physicians indicting that [Plaintiff] is disabled or even has limitations greater than those determined in this decision." (*R. at 28.*)

The ALJ found that there is no indication that Plaintiff ever worked above substantial gainful activity levels, so he found that Plaintiff has no past relevant work and he proceeded to the fifth step. *Id.* At the fifth and final step, the ALJ found that, based on the VE's testimony, and considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, such as a call out operator, document preparer, or bonder, semi-conductor all of which are "sedentary and unskilled" jobs. (*R. at 29.*) The ALJ,

therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*R. at 30.*)

## V.  Analysis

Plaintiff contends that the ALJ made the following four errors in his decision: (1) the ALJ failed to identify the conflict between the reasoning level for the jobs identified by the VE as available for Plaintiff and the ALJ's RFC finding that Plaintiff is limited to simple, routine tasks; (2) the ALJ failed to include a limitation for concentration, persistence or pace in his RFC finding and in his hypothetical question to the VE; (3) the ALJ failed to properly consider Plaintiff's obesity; and (4) the ALJ applied an improper burden of proof at step five. [*Doc. 15* at 9-12].  Plaintiff asks the Court to reverse the ALJ's decision and remand for a rehearing.  *Id.* at 13.  Defendant disputes Plaintiff's contentions and argues that the ALJ's decision should be affirmed because it is based on substantial evidence, the ALJ properly evaluated Plaintiff's mental impairments and properly considered her obesity.  [*Doc. 16* at 4-13].

### A.  Conflict Between VE's Testimony and the ALJ's RFC Finding

Plaintiff's first claim is that the ALJ's finding that Plaintiff's RFC is limited to simple tasks conflicts with the VE's testimony identifying call out operator and document preparer as occupations available to Plaintiff, because those occupations require a reasoning level higher than that for simple, routine tasks.  [*Doc. 15* at 9].  Plaintiff states that, because the ALJ failed to identify this conflict and to obtain a reasonable explanation from the VE about the conflict, the VE's testimony regarding these two occupations is not substantial evidence to support the ALJ's finding that Plaintiff can perform these jobs.  *Id.* at 9-10.  Plaintiff further contends that the third job

identified by the VE, which is bonder, semi-conductor, "may not be simple or routine, because the [Dictionary of Occupational Titles] states that it requires working under specific instruction and attaining precise set limits, tolerances, and standards." *Id.* at 10.

In response, Defendant contends that the VE properly considered Plaintiff's specific limitations before testifying about the jobs she could perform, and that his testimony can supplement information in the Dictionary of Occupational Titles (hereinafter "DOT"). [*Doc. 16* at 5-6]. Defendant further contends that, even if two of the occupations identified by the VE require a higher reasoning level than is consistent with Plaintiff's RFC, the third occupation is consistent with her RFC, and one occupation is sufficient for the Commissioner to find that Plaintiff is not disabled. *Id.* at 6-7. In her reply, Plaintiff disputes Defendant's statement that the VE was not required to address the conflict with the reasoning level and Plaintiff's RFC, and further contends that, even though the third occupation has a lower reasoning level, it still appears to conflict with Plaintiff's RFC, so the ALJ should have obtained an explanation from the VE about that conflict. [*Doc. 17* at 2-3].

The Tenth Circuit has held that, before an ALJ may rely on the testimony of a VE to find that a claimant is not disabled, the ALJ must ask the VE if the evidence he or she has provided conflicts with the DOT and, if it does, the ALJ must elicit a reasonable explanation for any discrepancy between the DOT job descriptions and Plaintiff's exertional and non-exertional limitations. *See* SSR 00-4p, 2000 WL 1898704, at *4 (2000), and *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005). Here, the ALJ presented a hypothetical to the VE which included all of the RFC limitations in the ALJ's RFC determination. *Compare* (*R. at 22-23*) *with* (*R. at 66-67*). After being

9

presented with the hypothetical, the VE testified that, given those limitations, Plaintiff could perform the jobs of call out operator, document preparer, and bonder, semiconductor. (*R. at 68*.) The ALJ asked the VE if his testimony was consistent with the DOT, and the VE stated that it was. (*R. at 68*). The ALJ then asked the VE why the testimony was consistent with the DOT, and the VE stated: "The basic information comes from the DOT or one of, or [sic] its supplements." (*R. at 68-69*.) The ALJ then allowed Plaintiff's counsel to question the VE about his testimony. His only question to the VE was to ask why he picked only sedentary jobs, as opposed to light jobs. *Id.*

Because the ALJ asked the VE whether his answers were consistent with the DOT, and the VE replied that they were, it appears that the ALJ fulfilled his duty to develop the record on this issue. *See McKinnon v. Astrue*, No. 09-cv-00613-CMA, 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010) (unpublished) (holding that because the ALJ asked the VE if his testimony was consistent with the DOT, and the VE answered that it was, the ALJ met the requirements of SSR 00-4p), and *Schassar v. Astrue*, No. 08-2546-JWL, 2009 WL 3241597, at *5 (D. Kan. Oct. 5, 2009) (unpublished) (same). The ALJ was not required to elicit an explanation from the VE about a conflict between Plaintiff's RFC and the DOT because the VE testified that there was no conflict. While the Tenth Circuit in *Hackett* held that the ALJ in that case should have addressed the apparent conflict between the claimant's ability to perform simple, routine tasks and the VE's identification of jobs requiring level-three reasoning, that case is distinguishable because the VE in that case testified that there was a conflict between the claimant's RFC and the DOT, but failed to sufficiently explain that conflict. *Hackett*, 395 F.3d at 1176. Moreover, even if the ALJ here was required to elicit further explanation from the VE regarding whether the jobs requiring level-three

reasoning conflict with Plaintiff's RFC, the VE also identified the job of bonder, semi-conductor, which requires only level-two reasoning. *See* Dictionary of Occupational Titles, 4th ed., Revised 1991, DICOT 726.685-066, 1991 WL 679631 (G.P.O.). Plaintiff fails to provide any support for her contention in her reply that the ALJ should have obtained an explanation from the VE regarding the job of bonder, semi-conductor, other than stating that it appears to conflict with the RFC limitation to simple tasks. [*Doc. 17* at 3]. To the contrary, the Tenth Circuit in *Hackett*, 395 F.3d at 1176, found that an occupation requiring level-two reasoning appears more consistent with a limitation for simple, routine work. For these reasons, the Court finds that the ALJ properly relied on the VE's testimony and this claim is denied.

### B.  The ALJ's Consideration of Plaintiff's Concentration, Persistence or Pace

Next, Plaintiff contends that the ALJ failed to include Plaintiff's moderate difficulties in activities requiring concentration, persistence or pace in his RFC finding and in his hypothetical question to the VE. [*Doc. 15* at 10]. Defendant states that the ALJ properly evaluated Plaintiff's mental impairments in assessing her RFC because he accounted for the mental limitations regarding concentration, persistence or pace that he found at steps two and three. [*Doc. 16* at 8]. Defendant further states that the ALJ properly presented specific limitations in his hypothetical to the VE, which adequately corresponded to the ALJ's finding regarding Plaintiff's mental impairments. *Id.* at 9.

The ALJ found that Plaintiff has moderate difficulties with regard to concentration, persistence or pace in that she testified that she has difficulties remembering things and completing tasks, and is easily distracted, but the ALJ additionally noted that Plaintiff was able to complete her

GED in 2007. (*R. at 22*.) The ALJ explained that these limitations "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." *Id.* In his RFC findings, the ALJ concluded that Plaintiff has the mental focus to perform "simple tasks that are not performed in a fast[-]paced production environment [and] involving only simple work[-]related decisions." *Id.* at 22-23. The ALJ presented this same limitation to the VE in his hypothetical. (*R. at 67*.) The ALJ's RFC determination properly accounts for the limitation regarding Plaintiff's concentration, persistence or pace, because it limits Plaintiff to a work environment that is not fast-paced and involves only simple decisions. *See* SSR 96-8p, 1996 WL 374184, at *2 (1996) (explaining that the mental limitations in a claimant's RFC measure what a claimant can do despite the limitations imposed by her impairments). The ALJ's RFC determination that Plaintiff is limited to simple tasks that are not performed in a fast-paced production environment and involving only simple work-related decisions accounts for his finding at steps two and three that Plaintiff has moderate difficulties with regard to concentration, persistence or pace. While Plaintiff relies on *Wiederholt v. Barnhart* for her claim that the ALJ should have included her mental impairments in his RFC finding, that case is distinguishable because the ALJ in *Wiederholt* failed to describe the claimant's mental limitations in his hypothetical to the VE, which is not the case here. *See Weiderholt*, No. 03-3251, 121 Fed. Appx. 833, 839, 2005 WL 290082 (10th Cir. Feb. 8, 2005) (unpublished). In *Wiederholt*, the ALJ found that the claimant had moderate difficulties in maintaining concentration, persistence, or pace, but then only included the limitation of "simple, unskilled" mental tasks in his hypothetical to the

VE, while in this case, the ALJ included all of the mental limitations that are in his RFC determination in his hypothetical to the VE.

In her reply, Plaintiff relies on *Chambers v. Barnhart*, No 03-7007, 2003 WL 22512073, at *3 (10th Cir. Nov. 6, 2003) (unpublished), but that case is distinguishable. In *Chambers*, the Tenth Circuit found that the ALJ erred in not assessing the claimant's functional limitations in concentration, persistence or pace, where the record included substantive findings in the claimant's Psychiatric Review Technique (hereinafter "PRT") form that the claimant was unable to sustain work on a regular and reliable basis and needed a job that did not require regular attendance. *Chambers*, 2003 WL 22512073, at *3. The Tenth Circuit found that the ALJ's RFC determination, which only limited the claimant to simple tasks and did not address the claimant's day-to-day reliability as a worker, was inadequate given the specific findings in the PRT forms regarding the claimant's day-to-day reliability as a worker. *Id*. Here, the record does not include any substantive finding regarding Plaintiff's reliability as a worker, and her PRT form only indicates a finding of a "mild" limitation with regard to maintaining concentration, persistence or pace. (*R. at 298.*) In addition, the ALJ in the instant case accounted for Plaintiff's difficulties with remembering things, completing tasks, and being distracted, by limiting her RFC to simple tasks not performed in a fast-paced production environment and involving only simple work-related decisions, which is a more restricted RFC than the one in *Chambers*. For these reasons, the Court finds that the ALJ properly addressed Plaintiff's mental limitations in his RFC and in the hypothetical to the VE, and this claim fails.

### C.  The ALJ's Obesity Consideration

Plaintiff next contends that the ALJ was wrong in stating that the medical records do not contain any body mass index (hereinafter "BMI") numbers, the ALJ improperly failed to note how to calculate a BMI given Plaintiff's height and weight, and the ALJ failed to consider the range of Plaintiff's BMI numbers.  [*Doc. 15* at 11-12].  Defendant responds that the ALJ properly evaluated Plaintiff's obesity in noting that it does not cause more than minimal limitations in Plaintiff's ability to perform basic work activities, and that the ALJ was not required to consider an obesity-linked limitation because such a limitation is not supported by the record.  [*Doc. 16* at 10].

The ALJ found that Plaintiff's obesity is a not a severe impairment, and that it does not cause more than minimal limitations in Plaintiff's ability to perform basic work activities.  (*R. at 21*.)  The medical records support this finding.  *See* (*R. at 246*) (Dr. Ford's notation that an MRI shows a degenerated disc at L4-5, but no herniated disc, that Plaintiff could stand on her toes and heels, her straight-leg raise was negative bilaterally, and that her strength and sensation were intact in both lower extremities; he notes further that "she should be able to hold a job that requires lifting up to 20 lbs. on a frequent basis"); (*R. at 251*) (Dr. Ford's notation that Plaintiff "walks well on her toes and heels," and that it would be better if Plaintiff lost weight, but not mentioning any impact of her weight on her being able to work); and (*R. at 344-346*) (medical records showing that Plaintiff successfully lost weight, that medical personnel encouraged Plaintiff to walk, and that Plaintiff had a goal of walking up to five times a week and exercising regularly).  The Court rejects Plaintiff's claim that the ALJ was required to provide any further consideration of Plaintiff's obesity.  Plaintiff relies on *Dewitt v. Astrue* for her claim, but in that case, the ALJ found that the claimant's obesity

was a severe impairment and rejected several opinions by doctors who had found functional limitations related to the claimant's obesity.  *Dewitt*, No. 09-3250, 381 Fed. Appx. 782, 784-86, 2010 WL 2181759 (10th Cir. June 2, 2010) (unpublished).  The holding in *Dewitt* does not provide support for Plaintiff's claim because the ALJ here did not find that Plaintiff's obesity was severe and Plaintiff's medical records do not include any findings of functional limitations relating to obesity.  For these reasons, the Court denies this claim.

### D.  Burden of Proof Applied at Step Five

Finally, Plaintiff contends that the ALJ improperly stated that Plaintiff continued to have the burden of proof at step five, when at step five the ALJ should have recognized that Plaintiff has no burden of proof.  [*Doc. 15* at 12].  Defendant responds that the ALJ properly recognized that it is Plaintiff's burden to establish her RFC at all steps of the sequential evaluation process, and the ALJ properly relied on regulations which explain that it is the Commissioner's limited burden at step five to provide evidence establishing the existence of work in the national economy that a claimant can perform in light of her RFC.  [*Doc. 16* at 12-13].  The Court rejects this claim because the ALJ was not incorrect in stating that "[a]lthough the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration."  (*R. at 20.*)  The Tenth Circuit has explained that "the agency's burden at step five does not include the burden to provide medical evidence in support of an RFC assessment, unless the ALJ's duty to further develop the record is triggered."  *See Howard v. Barnhart*, 370 F.3d 945, 948 (10th Cir. 2004), *see also* 20 C.F.R. § 416.960(c) (explaining that at step five the Social Security Administration "is not responsible for providing additional evidence"

about the claimant's RFC because it will use the same RFC assessment that it used to determine whether the claimant could perform his or her past relevant work).  The ALJ, therefore, did not improperly shift the burden to Plaintiff at step five and his statement that Plaintiff was still responsible for proving her disability at that step was not incorrect.   The Court denies this claim.

## VI.  Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards.  Accordingly, the Court will **AFFIRM** the decision of the Commissioner and **DENY** Plaintiff's motion.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's *Motion to Reverse and Remand for a Hearing, With Supporting Memorandum (Doc. 15)* is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes a. Martinez*
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**